**TRANSISTOR DEVICES, INC., Plaintiff,**

v.

**TRACOR, INC. et ano., Defendants.**

**No. CV–86–2374.**

United States District Court, E.D. New York.

Feb. 25, 1987.

Hart Baxley Daniels & Holton, by Charles E. Baxter, Ira Cohen, New York City, for plaintiff.

Darrel R. Branhagen, Asst. Gen. Counsel, Tracor, Inc., Austin, Tex. and Arnold White & Durkee, Houston, Tex., by Michael T. McLemore, and Nims Howes Collison & Isner, by Bert A. Collison, Julie Lauber, New York City, for defendants.

SIFTON, District Judge.

Plaintiff, Transistor Devices, Inc. ("TDI"), brought this action against defendants, Tracor, Inc. ("Tracor") and Tracor's subsidiary, Tracor Aerospace, Inc. ("Aerospace"), alleging trade dress infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and various pendent state tort and contract claims. The matter is before the Court on defendants' motion to dismiss the complaint for lack of personal jurisdiction, improper venue, and failure to state a cause of action or, in the

alternative, to transfer the action to the Western District of Texas. Defendant Tracor has also separately moved to be dropped as a party and for summary judgment dismissing the complaint.

Plaintiff is a New Jersey corporation with its principal place of business in Cedar Knolls, New Jersey. TDI is in the business of designing and manufacturing transformers, power assemblies, and power supplies for electronic equipment. Defendant Tracor is a Delaware corporation with its principal place of business in Austin, Texas. Tracor is a large, diversified holding company with subsidiaries engaged in the manufacture of sophisticated electronic equipment for both civilian and military applications. Defendant Aerospace is a Texas corporation and wholly-owned subsidiary of Tracor, having its principal place of business in Austin, Texas. Aerospace designs and manufactures specialized electronic systems for United States and foreign military markets as well as commercial avionics systems.

The present controversy involves a power supply unit that TDI developed for use in a commercial airline navigational system manufactured by Tracor. In January 1976, Aerospace's corporate predecessor, Tracor Sciences and Systems Division, invited TDI to develop and manufacture on a so-called "black box" basis a power supply unit for the OMEGA navigational system Tracor was in the process of developing. Tracor specified the function, configuration and environmental performance requirements of the proposed unit, leaving design, engineering and manufacturing to TDI.

TDI accepted the offer and in cooperation with Tracor proceeded to develop a conforming power supply unit. As part of the initial design development, TDI incurred $150,000 in non-recurring engineering costs. TDI claims that, as is the custom in the industry, it agreed to absorb these start-up costs with the understanding that they would be recovered through on-

going requirements sales of the units to Tracor. TDI also agreed to forebear selling the unit to any other electronic equipment manufacturer.

Beginning in November 1976, Tracor and TDI entered into a series of agreements for the sale of the power units. Over the course of their relationship, which ended in September 1982, when TDI completed delivery on Tracor's last order, TDI manufactured approximately 375 units for Tracor. During this period, Tracor made several changes in the units' specifications as improvements were designed into the OMEGA system. Each time TDI accommodated these new specifications, it incurred additional non-recurring engineering charges. In October 1977, TDI forwarded to Tracor blueline drawings of both an AC and DC powered version of the power supply unit.

The complaint alleges that sometime after delivery of what turned out to be Tracor's final order, Tracor informed TDI that it was purchasing power supply units from another, less expensive supplier. TDI claims that it was led to believe that a novel, lower-cost unit had been developed.

Sometime thereafter, however, TDI learned that Tracor's new supplier was Avtech Corporation and that in TDI's opinion the Avtech unit was an unauthorized copy of TDI's own design. In a cease and desist letter dated July 12, 1985, TDI directed Tracor to stop using the Avtech unit on the ground that it is a copy of TDI's proprietary internal design. The parties exchanged several letters in which Tracor took the view that it had no obligation to pay for royalties or manufacturing rights since TDI's design was non-proprietary and no express or implied licensing agreement had been entered into.[1] When it became clear that a negotiated settlement was not forthcoming, TDI commenced the instant action on July 16, 1986.

---

**1.** In affidavits submitted in support of the present motions, defendants admit that Aerospace purchased 159 power units from Avtech in May and November 1984. Defendants claim, however, that 98 of these units still remain in inventory in Texas. Moreover, they state that no Avtech units have been sold to customers in New York.

## DISCUSSION

Defendants move to dismiss the complaint on the ground of lack of personal jurisdiction and improper venue. In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court expressly approved the practice of considering venue before addressing personal jurisdiction on the ground that the venue rules impose limitations on where a defendant can be sued that may exceed the minimum amount of fairness required for the assertion of jurisdiction to comport with due process. *See id.* at 180, 99 S.Ct. at 2714. *See also Johnson Creative Arts v. Wool Masters, Inc.*, 743 F.2d 947, 949 (1st Cir.1984); 15 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3806 at 60–61. Since this Court finds that venue is not proper in this District, the Court need not reach the personal jurisdiction question.

The appropriate venue statute for a case involving a cause of action arising under federal law is 28 U.S.C. § 1391(b). The first question is whether all of the defendants reside in this District. Under 28 U.S.C. § 1391(c), a corporation is deemed to reside for venue purposes in "any jurisdiction in which it is incorporated or licensed to do business or is doing business." Since Tracor is incorporated in Delaware and Aerospace is incorporated in Texas, and neither are licensed to do business in New York, the defendant will be deemed to reside in this District only if they are "doing business" here within the meaning of § 1391(c).

There is some authority in this Circuit equating the test for "doing business" under § 1391(c) with the "doing business" analysis employed for determining personal jurisdiction under NYCPLR § 301. *See Sterling Television Presentations v. Shintron Co.*, 454 F.Supp. 183, 190 (S.D.N.Y. 1978); *Honda Associates, Inc. v. Nozawa Trading Inc.*, 374 F.Supp. 886, 889–90 (S.D. N.Y.1974); *Carter-Wallace, Inc. v. Ever-Dry Corp.*, 290 F.Supp. 735 (S.D.N.Y.1968). A recent First Circuit opinion, *Johnson*

*Creative Arts, supra,* at 954, disapproves of this so-called "identity approach" and proposes an arguably more restrictive test which asks whether the defendant has engaged in sufficient business in the district that the state in which the district is located could require the foreign corporation to qualify to do business there. Under either of these standards, the facts presented here fail to show that defendants have engaged in a "continuous and systematic" course of doing business in this District. *See Beacon Enterprises Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983).

It is undisputed that neither Tracor nor Aerospace maintain an office, place of business, telephone listing, agents or employees in New York. Nor do they own any real estate or maintain a bank account in New York. According to the uncontradicted information set forth in defendants' affidavits, defendants only contacts with New York consist of solicitation and sale of Aerospace products, including the OMEGA navigational system. Aerospace's 1985 sales in New York amounted to $1,266,043, representing 1.06% of the company's total annual sales.[2] Aerospace also markets its products in New York by mailing brochures to New York residents who make telephone inquiries, advertising in national trade publications, and making in-person sales presentations.

Borrowing from the case law applying CPLR § 301, these contacts fail to establish a "continuous and systematic course of 'doing business'" sufficient to sustain a finding that venue is proper in this District. First, the shipment of goods into New York does not, without more, constitute "doing business." *See Beacon Enterprise, supra,* 715 F.2d at 763; *Dunn v. Southern Charters, Inc.,* 506 F.Supp. 564, 567 (E.D.N.Y. 1981); *cf. Kramer v. Vogel,* 17 N.Y.2d 27, 30–32, 267 N.Y.S.2d 900, 902–04, 215 N.E.2d 159, 160–62 (1966) (mere shipment of goods into New York insufficient to meet lesser standards of "transacting busi-

---

**2.** The papers contain no figures on the volume of sales for other years.

ness" under § 302[a][1]).[3] Nor does the fact that defendants engaged in solicitation in New York, including occasional visits by sales representatives, amount to a continuous and substantial course of doing business. "To sustain personal jurisdiction, New York courts 'require "substantial solicitation" that is carried on with a considerable measure of continuity and from a permanent locale' within the state." *Beacon Enterprise, supra* at 763, *quoting Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 429, 431, 260 N.Y.S.2d 625, 627–28, 208 N.E.2d 439, 441 (1965). It is undisputed that defendants here did not maintain any permanent or semi-permanent offices in New York. Moreover, the fact that sales representatives made presentations in New York or defendants mailed brochures into New York is not enough to sustain jurisdiction. *See Liquid Carriers Corp. v. American Marine*, 375 F.2d 951, 953 (2nd Cir.1974); *Dunn v. Southern Charters, Inc., supra*, 506 F.Supp. at 567.

■ Accumulating all of defendants' contacts with New York set forth in the pleadings and accompanying affidavits, the undersigned concludes that defendants have not been "doing business" in New York within the meaning of § 1391(c).

Venue, however, may still be proper in this District if this District is where plaintiff's "claim arose" within the meaning of § 1391(b). Defendants argue that the claim did not arise in New York since the alleged copying occurred either in Texas, where the specifications for the Avtech power supply unit originated, or in Washington, where the units were manufactured. Moreover, defendants contend that the claim could not have arisen in New York because Aerospace has never shipped an OMEGA system containing an Avtech power unit into this state. Plaintiff, on the other hand, urges the Court not to credit defendants' sworn statements regarding the absence of New York sales on the ground that it has not yet had an opportunity to engage in discovery.

The Court need not delay resolution of this issue because, even assuming *arguendo* that defendants sold some Avtech units in New York, the Supreme Court's decision in *Leroy, supra*, instructs that venue is not proper in this District.

■ In considering the possibility that a claim might arise in more than one district, the Court stated:

"It is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts.... In our view ... the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)—may be assigned as the locus of the claim."

*Id.* 443 U.S. at 185, 99 S.Ct. at 2717. In terms of the availability of witnesses, accessibility of relevant evidence, and the convenience of the defendants, the Western District of Texas, where the defendants reside, and the Eastern District of New York are not districts that TDI would choose with equal plausibility.

With respect to the availability of witnesses and evidence, it seems clear that Texas is a more appropriate forum than New York. All of Tracor's and Aerospace's employees who will testify at trial are located in Austin. All of the defendants' corporate records are also located there; and, since the Avtech power units were manufactured in Seattle, Washington,

---

**3.** The aggregate value of defendants' sales, though no doubt significant, does not, by itself, constitute a corporate presence under CPLR § 301. Plaintiff's reliance on *Allen v. Canadian Gen. Elec. Co.*, 65 A.D.2d 39, 410 N.Y.S.2d 707, 708–09 (3d Dep't 1978), *aff'd,* 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 (1980), is misplaced since that case involved application of the term "substantial revenue" contained in CPLR § 302(a)(3).

all witnesses with knowledge of Avtech's role are also located more conveniently to Texas than New York. With respect to convenience to defendants, the factors already outlined establish that the Western District of Texas is the proper forum for this action.[4]

Plaintiff cites numerous cases in opposition to defendants' motion to transfer the action pursuant to 28 U.S.C. § 1404(a). These cases, however, address the quite different question of when it is appropriate to transfer an action to another district when plaintiff has already selected a proper, though perhaps inconvenient, venue for its suit. The primary question here is whether venue is proper in this District at all, and this Court concludes that it is not.

Pursuant to 28 U.S.C. § 1406(a), a case that has been brought in the wrong district may be dismissed or in the interests of justice transferred to a district in which it could have been brought. Since it is clear that the Western District of Texas is the district which can most plausibly be assigned as the locus of the claim, in comparison with New York or any other district into which goods were merely sent, the Court directs that the action be transferred to that District. *See Johnson Creative Arts, supra,* 743 F.2d at 956. Moreover, since the state claims concerning common law trademark infringement, unfair competition, and breach of contract arise out of the same facts, they are equally inappropriate in this forum. *See id.; Sunray Enterprises, Inc. v. David C. Bouza & Assoc., Inc.,* 606 F.Supp. 116, 119 (S.D.N.Y.1984).

For the reasons stated above, the Clerk is directed to transfer the within action to

the Western District of Texas and to mail a copy of the within to all parties.

SO ORDERED.

---

**4.** Prior to the Supreme Court's decision in *Leroy,* the courts in this Circuit applied a "weight of contacts" test for determining where venue lies in trademark infringement cases. *See, e.g., Transamerica Corp. v. Transfer Planning, Inc.,* 419 F.Supp. 1261 (S.D.N.Y.1976); *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 891 (S.D.N.Y.1974). Whether or not this test is compatible with the approach mandated by *Leroy,* the courts in this Circuit now exclusively apply the *Leroy* test. *See Georgia Boot*

*Division of U.S. Industries v. Georgia Footwear Corp.,* 579 F.Supp. 1037, 1038 (S.D.N.Y.1984); *German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.,* 569 F.Supp. 1529, 1532 (S.D.N.Y.1983). *See also Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 760 F.2d 312, 317 n. 8 (D.C.Cir.1985). In any event, it is clear that venue would not be proper in this District under the "weight of contacts" approach taken by these earlier cases.