KASH 'N GOLD, LTD., Plaintiff,

v.

ATSPI, INC., Defendant.

No. 87 C 3454.

United States District Court,
E.D. New York.

March 25, 1988.

Cooper, Dunham, Griffin & Moran (Norman H. Zivin, David J. O'Driscoll, of counsel), New York City, for plaintiff.

Yates & Caplan (W. Allen Readie, of counsel), Pittsburgh, Pa., Rivkin, Radler, Dunne & Bayh (David E. Steckler, of counsel), Uniondale, N.Y., for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

This case involves a dispute between two companies each holding a patent on a duck-shaped telephone. Plaintiff Kash 'n Gold, Ltd. (Kash 'n Gold) is a New York corporation with its principle place of business in Farmingdale, New York, and defendant ATSPI, Inc. (ATSPI) is a Pennsylvania corporation with its principle place of business in Freeport, Pennsylvania. Kash 'n Gold brought the action seeking (1) a declaratory judgment of invalidity, unenforceability, and non-infringement of defendant's patent for a duck-shaped telephone; (2) damages for unfair competition from threats of suit against plaintiff and its customers; or in the alternative (3) an order directing as-

signment of defendant's patent pursuant to an alleged agreement.

ATSPI moves for (1) dismissal for lack of in personam jurisdiction over it; (2) dismissal for improper venue; or (3) transfer to the Western District of Pennsylvania where ATSPI had previously filed an infringement action against several of Kash 'n Gold's customers. That action has been stayed pending disposition of this action.

The parties have submitted affidavits from which the court culls the material facts.

ATSPI holds U.S. Design Patent No. 272,579, issued February 14, 1984, for a two-piece, duck-shaped telephone. Its phone was designed, and is manufactured and distributed from its place of business in Pennsylvania. Kash 'n Gold holds U.S. Design Patent No. 291,569, issued August 25, 1987, for a one-piece, duck shaped telephone. It imports and distributes phones designed and manufactured in Taiwan.

By January 1987, ATSPI became aware that sales of two-piece, duck-shaped phones, imported by Kash 'n Gold, had been undercutting ATSPI's market. ATSPI's president, Vincent LoCastro, phoned president Kash Gobindram of Kash 'n Gold and told him that sales of Kash 'n Gold's two-piece telephone infringed on ATSPI's patent. By letter dated January 26, 1987 vice-president and counsel for ATSPI, Bruce Reale, wrote Kash 'n Gold and stated in part: "While we do not wish to immediately engage in a legal aciton (sic) requiring court appearances, etc., we feel confident that its outcome would be in our favor. However, we are reasonable businessmen and are willing to discuss a reasonable settlement...."

Sometime in late February or early March 1987, LoCastro and Reale traveled to Kash 'n Gold's headquarters in Farmingdale, New York to discuss with Gobindram and his vice-president Stanley Reiff the possibility of assigning ATSPI's patent to Kash 'n Gold. Shortly thereafter, ATSPI telefaxed a proposed assignment agreement to Kash 'n Gold. By letter dated March 17, 1987, Gobindram proposed on behalf of Kash 'n Gold a payment plan in the sum of $50,000. By letter dated March 23, 1987, Reale indicated general acceptance of the price and payment schedule by ATSPI's board of directors, but subject to several conditions concerning security, interest, and royalties. The parties dispute whether this series of negotiations produced a binding agreement at any point.

On July 30, 1987, Don Shriver, new vice-president for ATSPI, and Alfred Yates, new counsel, met with representatives of Kash 'n Gold in New York City. Kash 'n Gold urged ATSPI to comply with the alleged assignment agreement, but ATSPI refused. Kash 'n Gold contends that ATSPI representatives, as they had at the prior meeting and through other discourse, threatened to sue Kash 'n Gold and its customers should an agreement not be reached. ATSPI characterizes the conversations as settlement discussions but denies threatening Kash 'n Gold.

On or about September 18, 1987, ATSPI filed suit in the Western District of Pennsylvania against three of Kash 'n Gold's customers. ATSPI could not join Kash 'n Gold as a defendant in that action because Kash 'n Gold did not meet the special venue requirement for patent infringement cases. 28 U.S.C. § 1400(b). Kash 'n Gold filed the instant action October 9, 1987. In addition, ATSPI recently sued, in Pennsylvania state court, Kash 'n Gold and one of its customers for libel, commercial disparagement, and unfair competition. The case has been removed to federal court, consolidated with the customer action, and also stayed.

■ ATSPI first argues that the case should be dismissed for want of in personam jurisdiction over it. Where, as here, the court rules on the basis of affidavits and pleadings, the plaintiff need only establish a prima facie case. Were the court to hold an evidentiary hearing, plaintiff would have to establish in personam jurisdiction by a preponderance of the evidence. *Cutco Industries v. Naughton*, 806 F.2d 361, 364–65 (2d Cir.1986).

To have in personam jurisdiction over ATSPI, the court must have competence under New York Civil Practice Law and Rules (C.P.L.R.) §§ 301–302, and the exercise of that competence must comport with basic notions of fair play under the due process clause of the Fifth Amendment.

Kash 'n Gold cites three bases of competence under New York law: (1) presence of ATSPI in New York by virtue of the "doing business" test implied by C.P.L.R. § 301; (2) transaction of business under C.P.L.R. § 302(a)(1) by virtue of an agreement to transfer ATSPI's patent; and (3) commission of a tortious act within the state under C.P.L.R. § 302(a)(2) by virtue of ATSPI's threats to sue Kash 'n Gold and its customers.

The "doing business" test contemplates the exercise of jurisdiction even where the lawsuit is unrelated to the New York contacts. *Laufer v. Ostrow*, 55 N.Y.2d 305, 434 N.E.2d 692, 696, 449 N.Y.S.2d 456, 460 (1982). Accordingly, to be "doing business," a defendant must be "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its 'presence' in this jurisdiction." 434 N.E.2d at 695, 449 N.Y.S.2d at 458 (citations omitted). In particular, "New York courts require substantial solicitation that is carried on with a considerable measure of continuity and from a permanent locale within the state." *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 763 (2d Cir. 1983) (citations omitted).

■ Under the prevailing New York caselaw, it is plain that ATSPI did not and does not do business in New York. *See generally Laufer*, supra. ATSPI has never been licensed to conduct business in New York. It has maintained no place of business, employees, bank account, or telephone number. *Contrast Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 208 N.E.2d 439, 260 N.Y.S. 625 (1965) (jurisdiction; office, staff and bank account in New York). Of ATSPI's 43 telephone sales in New York from 1986 through October 1987, 39 were sold to independent dealers, and four were sold in response to advertisements in nationally distributed magazines.

These sales accounted for only 1.79% of all sales in 1986 and 3.72% in 1987. *Compare Transistor Devices, Inc. v. Tracor, Inc.*, 654 F.Supp. 601, 603–04 (E.D.N.Y.1987) (not "doing business"; 1.06%). They grossed only $3500 and $3000 respectively. *Contrast id.* (not "doing business"; $1,266,043/year). Other than the magazine advertisements, ATSPI engaged in only incidental mail and telephone solicitation of the independent dealers. *Compare Beacon Enterprises, supra,* (not "doing business"; infrequent mail order solicitation).

ATSPI's contacts with New York are too insubstantial under New York standards to be deemed "doing business," and therefore, Kash 'n Gold has not made a prima facie case under C.P.L.R. § 301.

■ Even where a defendant is not present in New York under C.P.L.R. § 301, jurisdiction may be founded on acts giving rise to a cause of action pursuant to the New York long arm statute, C.P.L.R. § 302. Kash 'n Gold thus asserts that jurisdiction derives from those contacts of ATSPI that form the bases for its tort and contract claims.

They first contend that officers of ATSPI purposefully availed themselves of the benefits and burdens of New York law by twice visiting to negotiate assignment of ATSPI's patent; a contract came into being; and, therefore, ATSPI "transact(ed) ... business within the state" under C.P.L.R. § 302(a)(1).

Kash 'n Gold correctly notes that courts gear analysis under section 302(a)(1) more to whether the defendant purposefully availed itself of the benefits and burdens of the jurisdiction and less to the question of where the parties were located when the contract came into being. Thus, related activities both preliminary to and subsequent to actual formation of a contract are important considerations. *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68, 75, 261 N.Y.S. 8, 18–19, *cert. denied. sub nom Estwing Manuf. Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

However, where no contract is formed and there is no other activity substantial enough to be deemed the transaction of business, then jurisdiction under C.P.L.R. § 302(a)(1) will not lie. *See e.g., Transatlantic Cement, Inc. v. Lambert Freres et Cie*, 448 F.Supp. 816, 818 (S.D.N.Y.1978); *see also Cutco Industries, supra*, at 368 (failed attempt to renegotiate contract jurisdictionally irrelevant).

Here, it does not appear that a contract was formed between the parties. ATSPI's letter of March 23, 1987 expressed its agreement with Kash 'n Gold's proposed price and payment schedule but subjected acceptance to five additional terms regarding, security, interest, and royalties. There is no indication in the record that Kash 'n Gold accepted these additional terms, or that the parties reached any other agreement.

And in the absence of a contract, the two brief negotiating sessions cannot be deemed the transaction of business in New York. *Compare McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 229 N.E.2d 604, 283 N.Y.S.2d 34 (1967) (two hour visit by defendant to discuss problems with renewable distribution contract, the original of which was negotiated seven years earlier in New York insufficient to be transaction of business). The cases relied on by Kash 'n Gold, in particular, *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 363 N.E.2d 551, 394 N.Y.S.2d 844 (1977) and *Parke Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970), are distinguishable because they indisputably involved actual contracts.

Equally dubious is Kash 'n Gold's assertion that jurisdiction may be founded on the basis of ATSPI's commission of "a tortious act within the state" under C.P.L.R. § 302(a)(2). Kash 'n Gold claims that representatives of ATSPI, while in New York, threatened to sue Kash 'n Gold and its customers; used the threats in bad faith as bargaining chips in the negotiations; and therefore committed the tort of unfair competition.

■ "(I)t cannot be disputed that the owner of a patent has a right to threaten suit for infringement, provided he does so in good faith." *MacLaren v. B–I–W Group, Inc.*, 329 F.Supp. 545, 548 (S.D.N.Y.1971); *see also Marshak v. Sheppard*, 666 F.Supp. 590, 603 (S.D.N.Y.1987) (applying same standard to threatened trademark action). In this case, it is undisputed that ATSPI held a patent for a two-piece, duck-shaped telephone; that the patent was obtained before Kash 'n Gold obtained its patent for a one-piece phone; that Kash 'n Gold imported and distributed two-piece, duck-shaped phones; and that Kash 'n Gold's customers sold those phones. Given these circumstances, it is difficult for the court to understand how suits threatened by ATSPI could be other than in good faith.

Kash 'n Gold's tort and contract claims in what is essentially a patent case are not reliable bases for jurisdiction. Furthermore, the court is concerned that those claims are addressed to what seems to have been a failed attempt to settle a dispute out of court. Public policy in favor of settling disputes would be frustrated if the law permitted consent to jurisdiction to be the price of failure to reach an agreement.

Nevertheless because the parties have not frontally addressed the merits of Kash 'n Gold's tort and contract claims, the court is reluctant to hold that Kash 'n Gold has not met its prima facie case of establishing in personam jurisdiction under the C.P.L.R., and, therefore, in effect, grant ATSPI summary judgment on those claims. Moreover, to direct ATSPI to formally move for summary judgment or, for that matter, to hold a hearing on the merits of those claims, simply to resolve the court's doubts as to jurisdiction, would put the cart before the horse. Therefore, "in the interest of justice," and, as will be seen, "[f]or the convenience of parties and witnesses," the court will grant ATSPI's motion to transfer this case to the Western District of Pennsylvania. 28 U.S.C. § 1404(a).

■ The court is aware of the prevailing rule in this circuit with respect to the priority of second-filed declaratory judgment actions in patent cases. Ordinarily, where two lawsuits involve essentially the same

subject matter, the first-filed takes priority absent a balance of conveniences or special circumstances favoring the second. *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). In a patent case in the Second Circuit, however, the presumption is reversed where the first action is a customer suit and the second is a declaratory judgment action filed by the manufacturer supplying those customers. *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177 (2d Cir.1969).

This shift in presumption recognizes that a manufacturer is the true defendant where one of its customers is sued since an adverse judgment will as a practical matter affect all of that manufacturer's goods. Often, as here, the manufacturer could not have been sued for infringement under the special venue provision of 28 U.S.C. § 1400(b) in the district of the customer action. The presumption is also designed to prevent forum shopping since, typically, a plaintiff will have a number of disparately located customers to choose from in filing suit. *See Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir.), *cert. denied* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed. 2d 133 (1977).

However, the Second Circuit has cautioned that "(a)n inflexible approach to suits of this type is to be avoided." *Gluckin, supra,* at 179. In that case, the court favored the declaratory judgment forum, but the three relevant parties, both adversary manufacturers and the customer, had strong connections to that forum. Moreover, the court affirmed an order restraining prosecution of the customer action, pending disposition of the declaratory judgment action. Here, the customer action has already been stayed, and the question is not so much "which [suit] takes priority," *Gluckin, supra,* at 177, as where the declaratory judgment action should be litigated. Transfer would not frustrate the salutory goal of having the two patent holders on both sides of the litigation.

In the case at hand, ATSPI's connections to New York are so weak as to call into serious doubt the advisability of the court's exercising jurisdiction. Though the travel of corporate officers who will testify and the necessary shipment of documents favors neither forum, in most other respects, the balance of conveniences favors the Western District of Pennsylvania. All of ATSPI's witnesses who will testify to the telephone's design and manufacture reside in the Western District of Pennsylvania, and the inventor lives in nearby Ohio.

Kash 'n Gold, on the other hand, is an importer, not a manufacturer, and therefore the usual inference that its forum has an equivalent or stronger nexus to the litigation than the forum of a customer action is not justified. Its witness as to design and manufacture of its phone will come from Taiwan and several other witnesses from California. The court does not believe that those witnesses will be significantly burdened by travel to Pittsburgh as opposed to New York.

Finally, there is no evidence that ATSPI was forum shopping in selecting its home district for litigation.

It is true that the special patent venue provision, 28 U.S.C. § 1400(b), would have prevented ATSPI from suing Kash 'n Gold for infringement in the Western District of Pennsylvania. Kash 'n Gold neither resides nor "has a regular and established place of business" there. It is also true that no court could transfer such an infringement action there. *See* 28 U.S.C. § 1404(a) (transfer available of "any civil action to any other district where it might have been brought"). However, the action to be transferred is for declaratory judgment, not infringement. Such an action is governed by the general venue provision of 28 U.S.C. § 1391(b) which, of course, permits transfer to the district of a defendant's residence. *See United States Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir.1982); *Emerson Elec. Co. v. Black & Decker Mfg.*, 606 F.2d 234, 239–40 (8th Cir.1979).

In conclusion, in patent litigation, though the Second Circuit generally prefers that a second-filed declaratory judgment action take precedence over a first-filed customer

action, where as here, the question is not whether a customer action should go forward but where the declaratory judgment action should be litigated; where the customer action is filed in the district of that plaintiff's residence; where the declaratory judgment action is filed by an importer, not a manufacturer; where the balance of conveniences favors the customer action; where the declaratory judgment action is likely to founder jurisdictionally; and where exercise of jurisdiction implicates in a negative fashion the policy favoring out-of-court settlement of lawsuits, transfer to the district of the customer action is warranted.

The Clerk of Court shall transfer this case to the Western District of Pennsylvania. So Ordered.