**RIVIERA TRADING CORPORATION, Plaintiff,**

v.

**OAKLEY, INC., Defendant.**

**No. 96 Civ. 4123 (RWS).**

United States District Court, S.D. New York.

Oct. 8, 1996.

---

Gerard F. Dunne, New York City, for Plaintiff.

White & Case (Edward V. Filardi, Christina A. Sessa, of counsel), New York City, Weeks, Rathbone, Robertson & Johnson (Gregory L. Weeks, Janet M. Robertson, William L. Johnson, of counsel), San Diego, CA, for Defendant.

## OPINION

SWEET, District Judge.

Defendant Oakley, Inc. ("Oakley") has moved, pursuant to Rules 4 and 12(b)(2), Fed.R.Civ.P., and 28 U.S.C. § 1404, to dismiss or, in the alternative, to transfer the declaratory judgment action brought against it by Plaintiff Riviera Trading Corporation ("Riviera") on the grounds that service of the summons and complaint was defective, this Court lacks personal jurisdiction over Oakley, and New York is an inconvenient forum for this litigation. For the reasons set forth below, the motion will be granted in part and denied in part.

### Parties

Oakley is a manufacturer and seller of high quality sunglass products. Oakley is a Washington corporation with its principal offices in Irvine, California.

Riviera is a New York-based seller/distributor of sunglass products that are sold in department stores.

### Background

Oakley and Riviera were previously involved in litigation in the Southern District of California, *Oakley, Inc. v. Mervyns, Inc. and Riviera Trading Corporation*, No. 91–982 H(CM) ("the prior California action"), in which Oakley asserted that Riviera had sold sunglass models that infringed upon various Oakley patents. That case was settled by way of a Settlement Agreement and Stipulation, whereby Riviera acknowledged the validity of the patents in suit, agreed to cease and desist from the further sale of the products, and paid damages to Oakley.

Following settlement of the prior California action, Oakley sent cease and desist letters to Riviera and several of its customers on numerous occasions, again asserting patent infringement relating to two sunglass models being sold under the Riviera label.

Oakley's first cease and desist letter to Riviera regarding the instant dispute was dated August 23, 1995. Following subsequent settlement negotiations, Oakley, by letter dated February 20, 1996, sent counsel for Riviera a proposed settlement agreement. By letter dated April 30, 1996, counsel for Riviera responded with objections. By letter dated May 8, 1996, counsel for Oakley indicated the points on which Oakley was and was not willing to incorporate changes to the settlement agreement, and sent a revised settlement agreement.

Oakley also sent cease and desist letters to the following of Riviera's customers: Robinsons–May, located in California and headquartered in Missouri; JC Penney, Inc., located in California; Belk, located in Georgia and headquartered in North Carolina; and Sterns, located and headquartered in New York.

Having failed to reach a settlement of Oakley's new claims, Riviera filed this action ("the New York action") in the Southern District of New York on June 3, 1996. The New York action is a declaratory relief action alleging non-infringement of Oakley's patents, non-infringement of trade dress rights, false advertising, tortious interference with business relations, commercial disparagement and *prima facie* tort.

The summons and complaint in the New York action were handed to a receptionist at the Oakley corporate offices in California on June 5, 1996 by a process server. A second copy was mailed to the Oakley headquarters by the process server. On July 29, 1996, counsel for Riviera mailed a third copy of the summons and complaint to Mike D. Parnell, Chief Executive Officer of Oakley, at Oakley headquarters.

On June 7, 1996 Oakley filed an action for patent infringement in the Southern District of California, entitled *Oakley, Inc. v. J.C. Penney, Inc., The May Department Stores Company, Inc. dba Robinsons–May, Mervyns, Inc. and Riviera Trading Corporation,* Civil Action No. 96–1018 S CGA ("the California action"). The complaint in the California action alleges infringement of the patents at issue in the New York action, as well as several other patents.

Oakley has no property, offices, warehouses, employees, bank accounts or telephone listings within the State of New York. Oakley products are sold to consumers in New York State through retail outlets that purchase Oakley products from Oakley's California headquarters. Sales to retailers are governed by Oakley's "Retail Standards Agreement" that specifically provides that it is to be performed in Irvine, California. In 1995, sales of Oakley products to New York State amounted to $2.5 million, which constituted 1.9% of Oakley's domestic sales and 1.4% of Oakley's total sales. All Oakley advertising is disseminated from the Oakley headquarters. Oakley sales are solicited primarily by way of telephone contact, by in-house territorial manager employees.

Oakley uses outside sales representatives to service the authorized retail accounts that reside in the State of New York. They are independent contractors, not employed by Oakley. Oakley has no control over the manner in which they conduct their services for Oakley and the representatives have no authority to bind Oakley in contract or to open new account locations.

No discovery has been conducted to date in the New York action. On June 25, 1996, Oakley filed the instant motion to dismiss or, in the alternative, to transfer this action on the grounds that: (1) service of the summons and complaint was defective; (2) this Court lacks personal jurisdiction over Oakley; and (3) New York is an inconvenient forum for this litigation. Oakley's motion was considered fully submitted on July 17, 1996.

### Discussion

### I. *Service of the Summons and Complaint was Proper*

Oakley asserts that service of the summons and complaint was defective pursuant to Rule 4 of the Federal Rules of Civil Procedure. Service of a summons and complaint can be completed upon a corporation as set forth in Rule 4(h)(1), Fed.R.Civ.P. Rule 4(h)(1) permits service in the manner provided by the State of New York or upon an "officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process...." ·

Rule 4(h)(1) further provides that service upon a corporation may be made "in the manner proscribed for individuals by subdivision (e)(1)...." Rule 4(e)(1), in turn, provides that service may be made "pursuant to the law of the state in which the district court is located, or in which service is effected...."

Thus, the question whether service was proper depends on whether service was completed in accordance with the laws of the State of California, as asserted by Riviera. The California Code of Civil Procedure ("CCP") section 416.10 provides that, to effectuate service on a corporation, certain specified individuals may be served:

A summons may be served on a corporation by delivering a copy of the summons and of the complaint: (a) to the person designated as Agent For Service of Process ...; (b) to the President or other head of the corporation, a Vice–President, a Secretary or assistant Secretary, a Treasurer or assistant Treasurer, a General Manager, or a person authorized by the corporation to receive service of process; 162

CCP § 416.10(a) and (b).

Additionally, Section 415.20 of the California Code of Civil Procedure provides:

(a) In lieu of personal delivery of a copy of the summons and of the complaint to the person to be served as specified in § 416.10, 416.20, 416.30, 416.40, or 416.50, a summons may be served by leaving a copy of the summons and of the complaint during usual office hours in his or her office with the person who is apparently in charge thereof, and by thereafter mailing a copy of

the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left. Service of the summons in this manner is deemed complete on the 10th day after such mailing.

■ "The evident purpose of section 415.20 is to permit service to be completed upon a good-faith attempt at physical service on a responsible person, plus actual notification of the action by mailing the summons and complaint to the appropriate party." *Khourie, Crew & Jaeger v. Sabek Inc.*, 220 Cal.App.3d 1009, 1013, 269 Cal.Rptr. 687, 689 (1990).

■ On June 5, 1996, a process server entered the lobby of Oakley's offices and asked the receptionist if any officers were present, as she had papers to deliver to them. The receptionist told the process server that no officers were present and that the papers should be delivered to the legal department. The receptionist then contacted Donna Sandidge of Oakley's legal department, who was also unavailable. After learning that no officers or representatives of the legal department were available, the process server left the summons and complaint on the desk in the lobby.

Also on June 5, 1996, Riviera mailed a copy of the summons and complaint, with first-class postage prepaid, to Oakley at its business address in Irvine, California. In response to Oakley's contention that the substituted service was defective because the mailing was not addressed to a specific individual, on July 29, 1996, Riviera sent an additional copy of the summons and complaint to Mike D. Parnell, Oakley's Chief Executive Officer, at Oakley's California headquarters.

California courts have recognized that, pursuant to CCP section 415.20, when a receptionist refuses to accept papers, service upon a corporation in California can be ef-

fected by leaving the papers with the receptionist and later mailing a copy. *See Khourie*, 220 Cal.App.3d 1009, 269 Cal.Rptr. 687. Riviera has demonstrated its compliance with both the spirit and the letter of section 415.20. A copy of the summons and complaint were left with the receptionist at Oakley, the person apparently responsible. Subsequently, Riviera mailed a copy of the summons and complaint to Oakley's Chief Executive Officer. Accordingly, Oakley's motion to dismiss based on defective service will be denied.[1]

## II. *Personal Jurisdiction over Oakley*

■ In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a district court must construe the facts from the pleadings and affidavits in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). While a plaintiff bears the burden of establishing jurisdiction over a defendant, prior to an evidentiary hearing, a motion for lack of personal jurisdiction is defeated simply by showing that the pleadings in good faith alleged sufficient grounds for jurisdiction. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir.1990).

■ To determine whether *in personam* jurisdiction exists over a nonresident defendant, a federal court in a diversity action must look to the forum state's general jurisdictional or long-arm statute. *See Savin v. Ranier*, 898 F.2d 304 (2d Cir.1990) (citing *Arrowsmith v. United Press Intern.*, 320 F.2d 219, 222–25 (2d Cir.1963) (en banc)). In the present action, Riviera alleges, *inter alia*, that Oakley is subject to jurisdiction under sections 301 and 302(a) of the Civil Practice Law and Rules (CPLR).

■ The court must determine the issue of personal jurisdiction separately for each cause of action asserted in the plaintiff's complaint. *See Interface Biomedical Laborato-*

---

1. Oakley relies on *Kovalesky v. A.M.C. Associated Merchandising*, 551 F.Supp. 544 (S.D.N.Y.1982), in support of its argument that service was defective. That case, however, is distinguishable on several grounds. The process server in that case literally threw the papers at the defendant's receptionist, and made no further attempt to ensure defendant's receipt of the papers. *See Kovalesky*, 551 F.Supp. at 546. Such "sewer service" was plainly insufficient under New York law, which governed.

*ries Corp. v. Axiom Medical, Inc.*, 600 F.Supp. 731, 734 (E.D.N.Y.1985) (finding jurisdiction for declaratory judgment cause of action, but not for unfair competition and unjust enrichment causes of action) (*citing Sterling Television Presentations v. Shintron*, 454 F.Supp. 183 (S.D.N.Y.1978)). *See also Darby Drug Company, Inc. v. Zlotnick*, 573 F.Supp. 661 (E.D.N.Y.1983); *R.F.D. Group Ltd. v. Rubber Fabricators, Inc.*, 323 F.Supp. 521 (S.D.N.Y.1971).

### A. *General Jurisdiction Under Section 301*

Section 301 confers general jurisdiction over any foreign corporation "doing business" within the jurisdiction, regardless of whether the cause arises out of that transaction or business. *Laufer v. Ostrow*, 55 N.Y.2d 305, 434 N.E.2d 692, 696, 449 N.Y.S.2d 456, 460 (1982). To be "doing business," "a defendant must be 'engaged in such a systematic and continuous course of doing business here as to warrant a finding of its 'presence' in this jurisdiction.'" *Kash 'N Gold, Ltd. v. ATSPI, Inc.*, 690 F.Supp. 1160, 1162 (E.D.N.Y.1988) (quoting *Laufer*, 434 N.E.2d at 695, 449 N.Y.S.2d at 458). To support general jurisdiction, New York courts require substantial solicitation that is carried on with a considerable measure of continuity and from a permanent locale within the state. *Beacon Enterprises Inc. v. Menzies*, 715 F.2d 757, 763 (2d Cir.1983).

For purposes of section 301, Riviera has not met its burden of demonstrating that Oakley is "doing business" in New York State. Oakley has no property, offices, warehouses, employees, bank accounts or telephone listings within the State of New York. *See Kash 'N Gold*, 690 F.Supp. at 1162. Oakley products are sold to consumers in New York State but are sold through retail outlets that purchase Oakley products from Oakley headquarters in Irvine, California. Sales to retailers are governed by Oakley's "Retail Standards Agreement" that specifically provides that it is to be performed in Irvine, California. In 1995, sales of Oakley products to New York State constituted only 1.9% of Oakley's domestic sales and 1.4% of Oakley's total sales. *See Transistor Devices,*

*Inc. v. Tracor, Inc.*, 654 F.Supp. 601, 603–04 (E.D.N.Y.1987).

Oakley's sunglasses are sold at numerous retail outlets in New York, including the chain called Sunglass Hut. Oakley sales are solicited primarily by way of telephone contact, by in-house territorial manager employees. Oakley uses outside sales representatives, including several residing in New York, to service the authorized retail accounts that reside in the State of New York, but they are independent contractors, and not employed by Oakley. Oakley has no control over the manner in which they conduct their services for Oakley and the representatives have no authority to bind Oakley in contract or to open new account locations.

Under New York law, Oakley does not do business in New York for purposes of section 301. "The shipment of goods into New York does not *ipso facto* constitute 'doing business.'" *Beacon Enterprises*, 715 F.2d at 763 (citing *Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc.*, 495 F.Supp. 253, 257 (S.D.N.Y.1980)). "[N]o court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action." *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir.1984). "[I]t is not enough that an independent contractor is present in New York, systematically soliciting business for the corporation," *Artemide SpA v. Grandlite Design and Mfg. Co., Ltd.*, 672 F.Supp. 698, 703 (S.D.N.Y.1987), no matter how substantial the orders. *Id.* (citing *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958), *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 459, 434 N.E.2d 692, 694–695 (1982) and *Delagi v. Volkswagenwerk*, 29 N.Y.2d 426, 433, 328 N.Y.S.2d 653, 657 278 N.E.2d 895, 898 (1972)).

The cases relied upon by Riviera, *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039 (2d Cir.1990), and *Aquascutum of London, Inc. v. SS American Champion*, 426 F.2d 205 (2d Cir. 1970), are not persuasive authorities in support of finding jurisdiction here. In *Landoil*, the Court found that New York did *not* have

personal jurisdiction over the Defendant. The Court held that sales consisting of only 2% of total income in New York would not in and of itself confer jurisdiction, *id.* at 1044, and that for the "solicitation plus" rule to apply, "a Defendant's presence in New York in addition to solicitations must amount to more than 'paying persons to perform essentially mechanical tasks for it.'" *Id.* at 1045.

Likewise, in *Aquascutum,* the Court found that it could not exercise jurisdiction over a foreign freight forwarder defendant that did not solicit shipment in New York, but did make shipments to New York. The Court found important the defendant's representation in the state by independent contractors rather than employees. *Aquascutum of London,* 426 F.2d at 211.

In sum, Riviera has not met its burden of demonstrating that Oakley has a presence in the state sufficient to confer jurisdiction pursuant to section 301 over causes of action not relating to the business conducted in New York.

### B. *Specific Jurisdiction Under Section 302*

Riviera also alleges personal jurisdiction pursuant to Section 302(a)(2), which provides, in relevant part:

[A] court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent:

2. commits a tortious act within the state ...;

Riviera argues that jurisdiction under this section is proper because the Lanham Act claim for false advertising, as well as the state law tort claims for tortious interference with business relations, commercial disparagement and *prima facie* tort, arose out of Oakley's cease and desist letter to Stern's in New York, constituting the commission of a tortious act within the state.

Riviera has cited no precedent in support of its argument that jurisdiction pursuant to section 302(a)(2) may rest on the sending of a cease and desist letter into New York, in the absence of any other alleged tortious act. The only arguably relevant authority of which this Court is aware supports the con-

trary proposition. "The court simply cannot say that this defendant in seeking to enforce a patent claim could reasonably have expected his acts to have tortious consequences within the state. Therefore plaintiff has not demonstrated the applicability of section 302(a)(2)." *Etna Products Co., Inc. v. Igor Lifshitz,* 1984 WL 855 at *2 (S.D.N.Y.1984).

Furthermore, it is unclear whether Oakley's sending of a cease and desist letter to Stern's could give rise to a tort claim for tortious interference with business relations, commercial disparagement or *prima facie* tort. It is undisputed that Oakley holds valid patents to the sunglass designs at issue. "The owner of a patent has a right to threaten suit for infringement, provided he does so in good faith." *Kash 'N Gold,* 690 F.Supp. at 1163 (quoting *Maclaren v. B–I–W Group, Inc.,* 329 F.Supp. 545, 548 (S.D.N.Y.1971)).

At least one court in this Circuit has held that, in patent cases, jurisdiction should not be based solely on tangential claims of dubious merit. *See Kash 'N Gold,* 690 F.Supp. at 1163 (plaintiff's "tort and contract claims in what is essentially a patent cases are not reliable bases of jurisdiction").

However, the Honorable Eugene Nickerson, in *Kash 'N Gold,* held that in spite of the questionable nature of the Court's jurisdiction, "because the parties have not frontally addressed the merits of [plaintiff's] tort and contract claims, the court is reluctant to hold that [plaintiff] has not met its prima facie case of establishing in personam jurisdiction," as such a holding would, "in effect, grant [defendant] summary judgment on those claims." 690 F.Supp. at 1163. On the same reasoning and following Judge Nickerson's lead, Oakley's motion to dismiss the tort claims for lack of personal jurisdiction will be denied.

### III. *This Action Will Be Transferred to California*

Oakley contends that this case—filed several days before the California action was filed—should be transferred to the United States District Court for the Southern District of California on the grounds that this is

an inconvenient forum for the action. 28 U.S.C. § 1404 provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The general rule in the Second Circuit is that "as a principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action.'" *Capitol Records Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1353 (S.D.N.Y.1992) (quoting *Remington Products Corp. v. American Aerovap, Inc.*, 192 F.2d 872, 873 (2d Cir.1951)). As this Court has recently held, however, the first-filed rule "does not supersede the inquiry into the balance of convenience required under § 1404." *River Road Int'l, L.P. v. Josephthal Lyon & Ross, Inc.*, 871 F.Supp. 210, 214–15 (S.D.N.Y.1995) (citing *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1061 (S.D.N.Y.1987)). Notwithstanding which case was filed first, the balance of convenience between competing jurisdictions is left to the sound discretion of the district court. *Capitol Records*, 810 F.Supp. at 1353 (citing *Joseph Bancroft & Sons Co. v. Spunize Co. of America*, 268 F.2d 522 (2d Cir.1959)).

In addition, there exist several exceptions to the first-filed rule, which apply when "special circumstances" warrant giving priority to the second suit. *See William Gluckin & Co., Inc. v. International Platex Corp.*, 407 F.2d 177, 178 (2d Cir.1969). The Supreme Court has endorsed this case-specific approach, and has held that "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Kerotest Mfg. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1951).

Forum shopping by the plaintiff in the first-filed action is included among the "special circumstances" that have been held to warrant exception to the first-filed rule. *Rayco Mfg. Co. v. Chicopee Mfg. Co.*, 148 F.Supp. 588 (S.D.N.Y.1957). "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." *Capitol Records*, 810 F.Supp. at 1353.

According to Oakley, Riviera's choice to file in New York constituted forum shopping, since the parties had essentially reached a resolution as to one of the sunglass models and had begun settlement discussions as to the second model when Riviera filed the New York action on June 5, 1996.

Notwithstanding, Oakley has not demonstrated that Riviera's filing was motivated solely or largely by forum shopping. The correspondence between Riviera and Oakley indicates that while the parties were still engaged in negotiations, an impasse had been reached with respect to certain issues. However, Riviera's filing of this action on June 5, 1996, rather than responding to Oakley's recent letter of May 8, indicates that Riviera's New York filing was motivated in part by forum shopping.

In addition to forum shopping, other "special circumstances" that warrant exceptions to the first filed rule include the defendant's good faith attempts at settlement, judicial economy, the minimal difference in time between the filing of the two actions, and the lack of progress in either litigation. *See Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742 (S.D.N.Y.1977), *aff'd* 573 F.2d 1288 (2d Cir.1978); *Capitol Records*, 810 F.Supp. at 1354.

Each of these factors is present here. Judicial economy, "a factor of substance that weighs heavily in favor of departing from the first-filed rule," *Capitol Records*, 810 F.Supp. at 1354, would be served by avoiding duplicative litigation of identical issues in the California action and the New York action. Because Riviera has filed an answer in the California action rather than moving to transfer that case to this district, transfer of the New York action is a means of avoiding the waste of conducting two, mirror-image litigations of the same issues.

"The policy of promoting the amicable settlement of disputes also weighs in

favor of" the California action. *Capitol Records*, 810 F.Supp. at 1354. Oakley's ongoing correspondence with Riviera evidences a good-faith desire and attempt to settle. " 'Potential plaintiffs should be encouraged to attempt settlement discussions ... prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to instigate litigation in a district of its own choosing before the plaintiff files a complaint.' " *Capitol Records*, 810 F.Supp. at 1354 (quoting *Columbia Pictures*, 435 F.Supp. at 747). Oakley's May 8 letter proposed further discussions to negotiate a settlement and avoid litigation. Allowing Riviera to proceed in this forum based on the first-filed rule would undermine the policy of promoting good faith efforts to achieve a settlement. *See Capitol Records*, 810 F.Supp. at 1354.

Similarly, Oakley's cease and desist letters to Riviera—specifically the May 8 letter—served the dual purpose of furthering settlement discussions and putting Riviera on notice that the failure of negotiations would lead to litigation. "When a declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in a decision to allow the later filed action to proceed to judgment." *Capitol Records*, 810 F.Supp. at 1354 (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979)).

Finally, the importance of the earlier date of filing is diminished where, as here, the competing actions are filed within a short period of time of each other. *See Capitol Records*, 810 F.Supp. at 1355 (transferring first-filed action to district in which action was filed twenty days later) (citing *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F.Supp. 993, 996 (S.D.N.Y.1990)). Here, only four days passed between the filing of the two actions. Accordingly, no further progress has been made in this action that would militate against transfer to another district.

These factors, taken together, support the exercise of the Court's discretion in rejecting application of the first-filed rule. *See Capitol Records*, 810 F.Supp. at 1355. It remains to analyze whether the convenience of the par-

ties and witnesses, and the administration of justice, will be advanced by transfer to California.

The witnesses and documentary evidence pertaining to the Oakley patents at issue in this action are located in California. Additionally, two of the Riviera customers to whom Oakley sent cease and desist letters—prompting Riviera to file this suit—are doing business in California. A third is located in Georgia, and the fourth in New York. Presumably, numerous witnesses and documents relating to Riviera's allegedly infringing products are located in New York. Nonetheless, the balance of convenience tips in favor of California, particularly in light of the centrality of evidence regarding Oakley's patents—which evidence is located exclusively in California—to the litigation of this dispute.

The interests of justice will be served by a transfer. Duplication of effort in the two cases will be avoided. Because Riviera has already appeared in California action by filing an answer, Riviera must continue to appear in that action. Accordingly, no significant prejudice will result from Riviera being forced to litigate this action in California as well. This case will be transferred to the district that has more substantial contacts with the subject matter and the parties.

Finally, as set forth above, Riviera must independently establish that personal jurisdiction exists for *each* cause of action exerted in the complaint. As set forth above, the Court has found that no jurisdiction exists over Riviera's declaratory judgment causes of action, but that jurisdiction may be proper, pursuant to section 302(a)(2), over its tort claims. Under the circumstances, it would make little sense for the Court to retain partial jurisdiction over Riviera's tort claims; rather, judicial economy requires that the Court transfer Riviera's action in its entirety to the Southern District of California, as that course of action is the only efficient means of adjudicating this dispute.

Accordingly, the New York action will be transferred to the Southern District of California pursuant to 28 U.S.C. § 1404.

*Conclusion*

For the reasons set forth above, Defendant's motion to dismiss for defective service and lack of personal jurisdiction is hereby denied, and Defendant's motion to transfer is hereby granted.

It is so ordered.