**Joseph H. WARD, Jr., Plaintiff,**

v.

**FOLLETT CORPORATION d/b/a Follett Software Company, Defendants.**

**No. C 94–20163 RMW (ARB).**

United States District Court,
N.D. California.

Oct. 25, 1994.

---

**11.** St. Jude achieved its earnings goal for 1992 with a 21.5% increase in earnings over 1991.

(Sec.Am.Comp. ¶ 11.)

William J. Goines, A Professional Corp., Thomas P. Murphy, Berliner Cohen, San Jose, CA, for plaintiff.

Lawrence E. Butler, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, CA.

Peter C. Woodford, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

WHYTE, District Judge.

The motion to dismiss of defendant Follett Corporation was heard on October 14, 1994. The court has read the moving and responding papers and has heard the oral argument on the motion. For the reasons discussed below, the court grants the defendants' motion and dismisses plaintiff's complaint without prejudice to any motion before the Illinois district court to transfer the action for convenience purposes.

### I. Background

Follett is an Illinois corporation which develops and markets computer software programs for use by libraries. In 1985, Follett acquired a California corporation known as Library Software Company ("LSC"). The LSC assets acquired by Follett consisted primarily of programs in operation, programs under development or in the conceptual stage, documentation relating to those programs, and various fixed assets.

In conjunction with Follett's acquisition of LSC, Joseph Ward ("Ward"), one of the four partners of LSC and a California resident, entered into an Employment Agreement with Follett (the "Employment Agreement") on April 17, 1985. The Employment Agreement, like the acquisition itself, was executed in San Jose, California. Under the terms of the Employment Agreement, Ward is obligated to engage in software planning, creation, and marketing. Follett is required, pursuant to that agreement, to pay Ward royalties on the sales of certain computer programs ("products") to which Ward is or was the "primary contributor". The criteria underlying a designation of "primary contributor" are set forth in the Employment Agreement. The agreement also provides that Ward's entitlement to royalties is to cease as to any product if the product's programming language is changed and it "is modified in excess of thirty percent".

In August 1993, a dispute arose between Follett and Ward as to Ward's entitlement to royalties on sales of certain products. In particular, Follett disputes that Ward is entitled to royalties on the Unison Versions of Circulation Plus, Catalog Plus, and Textbook Plus. Over the next several months, Ward and Follett discussed various proposals concerning payments to Ward. During this time, Follett withheld royalty payments to Ward.

On March 4, 1994, Ward filed the instant action against Follett for breach of contract for Follett's alleged failure to pay royalties due. Ward immediately notified Follett's outside counsel of the filing. However, because Ward and Follett continued to engage in meetings during which it appeared that resolution might ensue, application was made to, and granted by, this court to extend Ward's time to serve its complaint. Following an unsuccessful settlement meeting on April 29, 1994, Ward's counsel asked Follett's counsel if he would accept service on Follett's behalf. Follett's counsel declined, and revealed for the first time that Follett had itself filed an action against Ward in the United States District Court for the Northern District of Illinois (the "Illinois action"). In the Illinois action, filed on January 20, 1994, Follett seeks a declaration that it is not obligated to pay royalties to Ward on sales of the Unison Products and that it is not in breach of the Employment Agreement. The complaint Follett filed at that time asserted, as a basis for denial of royalty payments, that Follett had changed "contemplated computer programming languages". Ward was served with that complaint on May 6, 1994.

On May 25, 1994, Follett filed an amended complaint in the Illinois action which, among other changes, deleted its reference to changes in the "contemplated computer programming language" and newly asserted that Ward was not a "primary contributor" to the development of certain products. Ward was served with the amended complaint two days later, on May 27, 1994.

On August 26, 1994, the parties appeared in the instant action at a case management conference, at which they agreed to a settle-

ment conference before Magistrate Infante and to various case management dates, including a March 20, 1995 trial date. On September 6, 1994, the parties appeared in the Illinois action for a Rule 16 conference, at which the Illinois court was advised of the status of the instant California action. The Illinois court declined Follett's request to set discovery dates in the Illinois action, directing the parties instead to return for a status conference on October 25, 1994, after the settlement conference before Magistrate Infante and after this court's hearing on the instant motion.[1]

## II. Legal Standards

■ The well-established "first to file" rule allows a district court to transfer, stay or dismiss an action when a similar complaint has been filed in another federal court. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir.1991). Thus, a court must look to three threshold factors in deciding whether to apply the first to file rule: the chronology of the two actions, the similarity of the parties, and the similarity of the issues. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982); *Alltrade, supra*, 946 F.2d at 625–26.

■ In determining when a party filed an action for purposes of the first to file rule, courts focus on the date upon which the party filed its original, rather than its amended complaint. *See Mattel, Inc. v. Louis Marx & Co., Inc.*, 353 F.2d 421, 424 (2d Cir.1965), *cert. denied* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966); *Ainsworth v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 298 F.Supp. 479, 480 (W.D.Okl.1969); *Hooker Chemicals v. Diamond Shamrock Corp.*, 87 F.R.D. 398, 401–04 (W.D.N.Y.1980).

■ While it has been said that the "first to file" rule "should not be disregarded lightly", *Church of Scientology v. U.S. Dep't. of the Army*, 611 F.2d 738, 750 (9th Cir.1979), district courts can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity. The circumstances under which an exception to the "first to file"

rule typically will be made include bad faith (citation omitted), anticipatory suits, and forum shopping (citations omitted)." *Alltrade, supra*, 946 F.2d at 628.

■ Generally a suit is anticipatory when the plaintiff filed its suit upon receipt of specific, concrete indications that a suit by the defendant was imminent. For instance, in *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir.1967), plaintiff filed a declaratory action following receipt of defendant's letter stating that, if plaintiff did not voluntarily submit to jurisdiction in one forum, defendant would sue in a forum in which defendant clearly had jurisdiction. The court found that plaintiff's declaratory judgement action was an anticipatory suit, having been "filed by Amerada as the immediate result of the letter inviting it to appear". *Amerada, supra*, 381 F.2d at 663.

■ A court may also relax the "first to file" rule if the balance of convenience weighs in favor of the later-filed action. While the *Alltrade* court cautioned that the respective convenience of the two courts normally "should be addressed to the court in the first filed action" rather than to the court in the later-filed action, *Alltrade, supra*, 946 F.2d at 628, it observed that "[i]n appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." *Id.*

## III. ANALYSIS

■ This court must first address whether Follett has met the threshold requirements for application of the "first to file" rule. It is undisputed that Follett filed its original complaint in Illinois on January 20, 1994, nearly two months before Ward filed its California complaint on March 4, 1994. That Follett amended its complaint after Ward filed its action does not change the first to file analysis. The action filed here is very similar to the action filed in Illinois. The central question in both actions is whether Ward is entitled, pursuant to the Employment Agree-

---

**1.** The parties dispute the extent to which the Illinois court's reluctance to proceed was related

to its concern over the instant motion.

ment, to royalties on sales of the Unison Products. Both actions involve Ward and Follett, and Ward and Follett alone. While Follett's original and amended complaints do not assert identical grounds for Follett's denial of royalty payments, that fact does not destroy the ultimate similarity between the Illinois action and the California action. Thus, Follett was the first party to file, and his suit should be given priority upon application of the "first to file" rule.

■ The court must then examine whether this case involves circumstances which should cause the court to disregard the "first to file" rule. In support of its claim of bad faith, Ward points to the following facts:

1. During nine months of discussions to resolve their dispute, Follett maintained that its failure to pay royalties was based on the fact that the amount of the payments far surpassed Follett's projections. Follett did not, during that time, mention any of the bases for its failure to pay which are now alleged in its Illinois action.

2. Ward was not notified that Follett had filed its January 1994 complaint until April 29, 1994, after Follett was told the instant action was pending. Furthermore, Ward never received a courtesy copy of either Follett's original or its amended complaint.

3. Follett filed its amended complaint prior to Ward's appearance in the Illinois action, and without obtaining leave of court.

4. Follett waited nearly four months to serve Ward with its original complaint.

■ The court is not persuaded that these facts, taken together, necessarily constitute bad faith litigation. Plaintiffs' duty to notify defendants of the filing of a complaint does not extend beyond the requirement that they give notice through service of process. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Moreover, pursuant to Fed.Rule Civ.Pro. 15(a), a plaintiff has the right to amend its complaint once "as a mat-

ter of course" any time before a responsive pleading, such as defendant's answer, is served. *See Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 613 (9th Cir.1993). A plaintiff amending her complaint as a matter of course does not require prior leave of court. Fed.Rule Civ.Pro. 15(a). Finally, plaintiff's service of Ward, while delayed, still fell within the 120–day service requirement of Fed.Rule Civ.Pro. 4(m). While Follett's conduct in bringing suit was perhaps less than courteous, it does not amount to bad faith warranting a departure from the "first to file" rule.

■ The court next addresses Ward's assertion that Follett's suit was filed in anticipation of its own, merely for the purposes of securing a favorable forum. Both Ward and Follett delayed service, presumably "because it appeared ... that the situation could be resolved without the expense of litigation." Ward's Opposition, p. 5. Moreover, Follett's suit was not brought pursuant to a notice-of-suit letter or any other concrete indication that Ward's own suit was imminent. Therefore, this court does not find Follett's suit to have been brought in anticipation of Ward's suit.

■ Finally, the court addresses Ward's assertion that the California action should proceed because a balancing of convenience weighs in favor of litigation in California. Ward contends that California is the more convenient forum because Ward, an individual, resides in California and performs most of his work for Follett in California. Follett in turn points out that Illinois is the residence of Follett and the majority of the employees who worked on the Unison Products, that discovery is already underway in Illinois, and that Ward travels to Illinois with some frequency. The court is not persuaded that a balancing of convenience weighs so strongly in Ward's favor as to justify a departure from the "first to file" rule. As pointed out in *Alltrade, supra*, 946 F.2d at 628, the respective convenience of the two courts should normally be addressed to the court in the first-filed action.[2]

2. The court is not suggesting that a motion to transfer based upon convenience should be made or, if made, whether it would have merit. The court is just making clear that the issue of trans-

The court does not find sufficient circumstances to justify an exception to the "first to file" rule. Thus, as the first-filing party, Follett's Illinois suit should be permitted to proceed without concern of a conflicting order being issued by this court.

### IV.  Order

Good cause appearing therefor, defendants' motion to dismiss is granted. The dismissal is without prejudice to any motion to transfer based on convenience made in the Illinois district court.

fer for convenience purposes is within the discretion of the Illinois district court.