Z–LINE DESIGNS, INC., a Nevada Corporation, Plaintiff,

v.

BELL'O INTERNATIONAL LLC, a New Jersey limited liability company, Defendant.

No. C–03–03535 RMW.

United States District Court, N.D. California, San Jose Division.

Oct. 29, 2003.

Paul W. Vapnek and Marc M. Gorelnick, Townsend and Townsend and Crew LLP, San Francisco, CA, for Z–Line Designs, Inc.

Gregory S. Gewirtz, Douglas T. Hudson, Lerner, David, Littenberg, Krumholz & Mentlik, LLP, Westfield, New Jersey, Duane M. Geck, Severson & Werson, P.C., San Francisco, CA, for Bell'O International, LLC.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

WHYTE, District Judge.

Defendant Bell'O International LLC's ("Bell'O") motion to dismiss was heard on

October 24, 2003. Declaratory Judgment plaintiff Z–Line Designs, Inc. ("Z–Line") opposes the motion, and has moved to enjoin prosecution of the Bell'O's second-filed action in New Jersey. For the reasons discussed below, the court grants defendant's motion to dismiss.

## II. Background

On June 23, 2003 defendant, through counsel Gregory Gewirtz ("defendant's counsel"), sent a cease-and-desist letter ("June 23 letter") to Z–Line alleging that two of plaintiff's products, a television stand and an audio tower, infringed defendant's copyrights and trade dress rights. (Gewirtz Decl. ex. A (letter from Gewirtz to Sexton of 6/23/03).) The letter requested a response by July 7, 2003. Plaintiff subsequently responded to the June 23 letter with a telephone call from plaintiff's counsel, Paul Vapnek ("plaintiff's counsel").[1] During that call, defendant gave plaintiff an extension of time, until July 11, to respond to the June 23 letter ("first deadline extension"). (Gewirtz Decl. at ¶¶ 5–6; Opp. at 2.) While the parties disagree as to who requested the deadline extension, and whether the deadline was pushed back to explore a possible settlement, it is undisputed that both parties agreed to push the deadline back.[2] (Gewirtz Decl. at ¶ 5; Vapnek Decl. at ¶ 2.)

When the July 11 deadline came and no response was received from plaintiff, counsel for defendant left a voice mail message with plaintiff's counsel. (Mot. to Dismiss at 3; Opp. at 2.) Plaintiff's counsel returned this call on July 24, 2003. (Mot. to Dismiss at 3; Opp. at 2.) During that phone call, defendant advised plaintiff that Bell'O was prepared to file an action if no settlement could be reached. (Mot. to Dismiss at 3.) The parties also disputed the strength of the copyrights and trade dress rights at issue. (Opp. at 3; Gewirtz Decl. at ¶ 10.) Again, both parties

agree that an extension was given in order for Plaintiff's counsel to communicate to his client Z–Line that a competitor, Seay, had reached settlement terms with Bell'O in another dispute. (Vapnek Decl. at ¶¶ 5–6; Gewirtz Decl. at ¶¶ 8, 10.) During this phone call, defendant's counsel set a "final deadline of July 30," and asserts that he made clear to Z–Line that Bell'O would file suit if Z–Line did not agree to settlement. (Gewirtz Decl. at ¶ 10.) Plaintiff's counsel disputes whether counsel for defendant used the term "deadline," but again does not dispute that both parties agreed to extend the deadline to respond back to at least Tuesday, July 29 ("second deadline extension"). (Gewirtz Decl. ex. C (letter from Vapnek to Gewirtz of 7/31/03).)

Defendant did not receive a response from plaintiff, and filed suit on July 31, 2003 in the District of New Jersey ("second complaint"). (Mot. to Dismiss at 4.) On the same day, defendant also sent a letter to plaintiff's counsel notifying him of the complaint and inquiring whether he was authorized to accept service on behalf of plaintiff. (Id.) In response to this letter, plaintiff's counsel sent a letter to defendant's counsel notifying him that he was unable to respond to him by the agreed upon deadline, and that Z–Line had filed this declaratory judgment action. (Gewirtz Decl. ex. C at 1.)

The parties do not dispute that the actions in the Northern District of California and District of New Jersey involve the same parties and issues. Defendant moves to dismiss this action by seeking to have the court disregard the first to file rule.

Bell'O asserts that, after giving notice of alleged infringement in its cease-and-desist letter to Z–Line and during the second deadline extension, provided for the purpose of promoting settlement, Z–Line improperly and in bad faith filed this action. Z–Line

---

1. Defendant states that this conversation with Z–Line's counsel, Paul Vapnek, occurred on June 27, 2003. (Mot. to Dismiss at 3.) Plaintiff states that this conversation occurred on June 24, 2003. (Opp. at 2.)

2. While Z–Line asserts that the extension to July 11 was given by Bell'O and was not requested, Z–Line fails to offer an alternative explanation for the extension other than for settlement purposes. (Vapnek Decl. at ¶ 3.)

counters that it never entered into settlement negotiations, and the deadline extensions to promote settlement were offered unilaterally by Bell'O. After Bell'O refused to act on its cease-and-desist letter, Z–Line filed this complaint. For the reasons discussed below, the court finds defendant's story the more persuasive of the two, and grants Bell'O's motion to dismiss.

## II. Analysis

### A. First to File Rule

■■■ The "first to file" rule allows a district court to transfer, stay or dismiss an action when a similar complaint has been filed in another federal court. *Ward v. Follett Corp.,* 158 F.R.D. 645, 648 (N.D.Cal. 1994); *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 623 (9th Cir.1991). In applying this rule, a court looks at three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues. *Ward,* 158 F.R.D. at 648; *Alltrade,* 946 F.2d at 625–26; *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir.1982). The first to file rule "should not be disregarded lightly." *Church of Scientology v. U.S. Dep't of the Army,* 611 F.2d 738, 750 (9th Cir.1979).

■■■ Even if the threshold factors of the first to file rule are met, "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Alltrade,* 946 F.2d at 627–28 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952).) District courts can, in the exercise of their discretion, dispense with the rule for reasons of equity. *Ward,* 158 F.R.D. at 648; *Alltrade,* 946 F.2d at 625–26. Circumstances under which the first to file rule will not be applied include bad faith, anticipatory suit, and forum shopping. *Alltrade,* 946 F.2d at 628 (citations omitted).

■■■ A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent. *See Ward,* 158 F.R.D. at 648; *Guthy–Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.,* 179 F.R.D. 264, 271 (C.D.Cal. 1998). Such anticipatory suits are disfavored because they are examples of forum shopping. *Alaris Med. Sys. v. Filtertek, Inc.,* 64 U.S.P.Q.2d 1955 (S.D.Cal.2001) (citing *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 602 n. 3 (5th Cir.1983)). Further, "[t]he Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *DeFeo v. Procter & Gamble Co.* 831 F.Supp. 776, 778 (N.D.Cal.1993); *Gribin v. Hammer Galleries,* 793 F.Supp. 233, 234–35 (C.D.Cal. 1992). Application of the first to file rule in such situations would thwart settlement negotiations, encouraging intellectual property holders to file suit rather than communicate with an alleged infringer. *See Charles Schwab & Co. v. Duffy,* 49 U.S.P.Q.2d 1862, 1864 (N.D.Cal.1998); *Riviera Trading Corp. v. Oakley, Inc.* 944 F.Supp. 1150, 1158 (S.D.N.Y.1996) (potential plaintiffs should be encouraged to attempt settlement discussions prior to filing lawsuits without fear of preemptive suit by defendant). *Capitol Records, Inc. v. Optical Recording Corp.,* 810 F.Supp. 1350, 1353–55 (S.D.N.Y.1992).

■■■ A court may also refuse to apply the first to file rule if the balance of convenience weighs in favor of the later-filed action. *Ward,* 158 F.R.D. at 648. The balance of convenience should normally be weighed by the court in the first filed action. *Id.* (citing *Alltrade,* 946 F.2d at 628).

As an initial matter, the factors necessary for application of the first to file rule are all met here. Plaintiff's complaint for declaratory judgment was filed in the Northern District of California on July 29, 2003, two days before defendant's complaint was filed in the District of New Jersey. The parties are the same in both actions, and both actions involve alleged copyright and trade dress violations by Z–Line.

### B. Anticipatory Filing

■■■ The June 23 letter from defendant to plaintiff, while demonstrating a willingness to

discuss settlement, also clearly demonstrates Bell'O's intention to enforce its intellectual property rights. The letter identifies in no uncertain terms Z–Line's allegedly infringing models, as well as the copyrights and trade dress rights protecting Bell'O's designs. (June 23 letter at 1.) The letter also requests information regarding damages resulting from the allegedly infringing activity, as well as a request to stop selling the products at issue. (*Id.* at 2.) Further, the letter state unequivocally that "Bell'O is willing to take all steps necessary to fully protect its intellectual properties, including commencing an action in an appropriate United States District Court if Z–Line does not comply with our aforementioned request." (*Id.* at 2–3.) Finally, the letter provides a deadline of July 7, by which time it can reasonably be inferred that if Z–Line did not capitulate defendant would bring suit. (*Id.*) Facing these demands, Z–Line had specific, concrete indications that a suit by Bell'O was imminent. Z–Line admits that had plaintiff filed suit before July 7, a departure from the first to file rule might be appropriate. (Opp. at 6.) Z–Line is also correct in asserting that suit cannot remain "imminent" for an indefinite period of time. (*See id.*) As discussed below, however, the threat of litigation remained imminent during the time period between the original July 7 deadline and July 31, when Bell'O filed its complaint.

The deadline for response to Bell'O's June 23 letter was extended twice, each time for a period of less than one week, and each time with the agreement of Z–Line's counsel.[3] From Bell'O's perspective, it is clear that the deadlines were extended in order to explore settlement possibilities. It is also readily apparent that Z–Line understood that this was the reason behind the extensions. While Z–Line may have made clear that it did not believe Bell'O had strong claims, Z–Line never explicitly refused to discuss settlement possibilities. Z–Line could have done this by refusing defendant's counsel's deadline extensions, if not the first time then the second

time. However, by accepting Bell'O's offer to extend the deadline for settlement twice, Z–Line also tacitly accepted that it was willing to explore settlement. Z–Line takes issue with the 18 day lag between the July 11 deadline extension and Z–Line filing its complaint. (Opp. at 6.) Thirteen of those days went by, however, due to the failure of Plaintiff's counsel to present his client's position in accordance with the agreed upon schedule. Finally, Z–Line filed its complaint during the second extension period. While plaintiff is correct in noting that Z–Line did not "race to the courthouse" on July 10, one day before the extended deadline, (Opp. at 6), Z-line did file its complaint one day before the final deadline agreed upon by both parties, despite not having enough time to communicate with Bell'O directly.

Z–Line argues that this court should follow the reasoning in *Royal Queentex Enterprises v. Sara Lee Corp.*, 2000 WL 246599 (N.D.Cal. 2000). (Opp. At 4.) In *Royal Queentex*, however, the district court applied the first to file rule because, *inter alia*, there were no misleading communications by the first filing party before filing suit. *Id.* Here, plaintiff's counsel accepted the second deadline extension to discuss the Seay settlement with Z–Line, and created a reasonable expectation that Z–Line would explore settlement rather than litigation. This was a misleading communication. Under these circumstances, the court is satisfied that plaintiff filed this action in anticipation of specific, concrete indications that a suit by Bell'O was imminent.

Denial of defendant's motion to dismiss in this situation would discourage pre-litigation settlement discussions. At a minimum, such a denial would encourage parties interested in protecting their intellectual property rights to file a complaint prior to attempting settlement. "Potential plaintiffs should be encouraged to attempt settlement discussions... prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before

**3.** For purposes of this motion, the court accepts as true Z–Line's assertions that Bell'O granted the two deadline extensions unilaterally, and not at the request of Z–Line.

the plaintiff files a complaint." *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1354 (S.D.N.Y.1992); *Lever Bros. Co. v. Procter & Gamble Co.*, 23 F.Supp.2d 208, 212 (D.Conn.1998); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F.Supp. 1150, 1158 (S.D.N.Y.1996); *Charles Schwab & Co., Inc. v. Duffy*, 49 U.S.P.Q.2d 1862, 1864, 1998 WL 879659 (N.D.Cal.1998).

· In addition, where as here a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first. *See Riviera Trading Corp.*, 944 F.Supp. at 1159; *Charles Schwab & Co.*, 49 U.S.P.Q.2d at 1864; *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

Finally, Z–Line filed this complaint only two days before Bell'O filed its complaint in New Jersey. Considering this relatively short time period between the two filings, the importance of the earlier filing date is diminished. *See Recoton Corp. v. Allsop, Inc.*, 999 F.Supp. 574, 577 (S.D.N.Y.1998) (refusing to apply first to file rule where two days separated two actions); *Riviera Trading Corp.*, 944 F.Supp. at 1159 (four days); *Capitol Records*, 810 F.Supp. at 1355 (20 days).

Under the totality of the circumstances, the court concludes that Z–Line filed its action because of the threat of imminent suit by Bell'O. This threat of suit prompted Z–Line to file this action in order to secure its choice of forum. These factors, taken together, support the court's refusal to apply the first to file rule, because Z–Line filed this action in anticipation of suit by Bell'O.

### C. Balance of Convenience

"A court may relax the 'first to file' rule if the balance of convenience weighs in favor of the later-filed action." *Ward*, 158 F.R.D. at 648. Neither party argues the balance of convenience. While documents and things related to Bell'O's copyrights and trade dress rights are likely located in New Jersey, it is equally likely that documents relevant to Z–Line's noninfringement arguments are located in California. As between the parties, the balance of convenience is a neutral factor.

### III. Order

For the foregoing reasons, the court, in its discretion, GRANTS defendant's motion to dismiss. Plaintiff's motion to enjoin prosecution of defendant's second-filed action is DENIED.