**XOXIDE, INC., Plaintiff,**

v.

**FORD MOTOR CO., Defendant.**

**No. CV 06–2004–GAF.**

United States District Court,
C.D. California.

July 21, 2006.

David L. Hoffman, Valencia California, for Plaintiff Xoxide, Inc.

Gregory D. Phillips, Scott Ryther, and Thomas R. Lee of Howard, Phillips & Andersen, Salt Lake City, UT, and Phillip E. Smith of Smith & Ellison in Irvine, CA, for Defendant Ford Motor Company.

**MEMORANDUM AND ORDER REGARDING DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS**

FEESS, District Judge.

## I.

### INTRODUCTION

On April 3, 2006, Plaintiff Xoxide, Inc. d/b/a MustangTuning.com ("Xoxide") filed suit in this Court seeking a declaration that Xoxide's business names, web address, telephone number, products, and practices were not infringing on Defendant Ford Motor Company's ("Ford") registered and protected trademarks. Xoxide's Complaint followed a series of exchanges between the parties initiated by a January 26, 2006 cease and desist letter from Ford to Xoxide explaining to Xoxide that it was violating Ford's trademark rights. Shortly after being served with the complaint in this matter, Ford acted upon the alleged infringements that were not amicably resolved and on May 16, 2006 it filed suit against Xoxide in the Eastern District of Michigan its choice of forum—alleging trademark infringement of the same marks and involving the same parties as are at issue in this case.

Ford now seeks to dismiss Xoxide's action in this Court on the grounds that Ford is the true plaintiff since it is the holder of the trademarks at issue. Ford sent to Xoxide various cease and desist letters, and it engaged in protracted settlement discussions with Xoxide in an attempt to effect a non-judicial resolution to the dispute. However, during settlement talks Xoxide preemptively filed suit in this Court to ensure its choice of forum would prevail should litigation ensue. Because the Court concludes Xoxide's action in this Court was initiated in anticipation of Ford's Michigan litigation and was a clear attempt to deprive Ford, the natural plaintiff, of its choice of forum, Ford's motion to dismiss is **GRANTED**.[1]

---

1. Because the motion to dismiss is dispositive, the motion to transfer venue is mooted.

## II.

## FACTUAL BACKGROUND

### A. FORD'S JANUARY 26, 2006 LETTER TO XOXIDE

Since at least 2003, Xoxide has used the website www.MustangTuning.com to distribute performance parts and accessories for Ford Mustang automobiles. (First Amended Complaint ("FAC") ¶ 5).

On January 26, 2006, counsel for Ford wrote to Xoxide claiming Xoxide was "violating Ford's [trademark or trade dress] rights in at least 4 ways." (Mot. to Dismiss, Ex. C [1/26/06 Ford Letter to Xoxide] at 53). Ford specifically alleged that Xoxide: (1) had allegedly "misappropriated the world-famous trademark Mustang® in the internet domain name Mustang-Tuning.com" in violation of the Anticybersquatting Consumer Protection Act ("ACPA"); (2) misappropriated the Mustang trademark in its business name, MustangTuning; (3) wrongfully incorporated Ford's Mustang trademark or a variation thereof into Xoxide's vanity phone number, 1–888–STANG–GT; and (4) was "manufacturing, marketing, advertising, and/or distributing wheels bearing a confusingly similar variation of Ford's registered" trademarks. (Id. at 53–55).

Ford ended the January 26, 2006 letter with a demand for production of information, including: (1) the number of products using or bearing Ford's trademarks; (2) the gross revenue from the sale of such products; (3) the period during which such products were sold; and (4) identification of all retail purchasers and suppliers. (Id. at 56). Additionally, Ford requested payment of damages, Xoxide's surrender of all products wrongfully bearing Ford trademarks, and a promise to "refrain from infringing or diluting" Ford's trademarks in the future. (id. at 56–57). Ford stated that resolution was possible either through compliance with the specified terms of an attached proposed settlement agreement ("Proposed Agreement"), (See id. at 58–59), by February 9, 2006, or "through litigation wherein Ford will seek all available remedies against you." (Id. at 56). As Ford wrote, "[i]n the event that you fail to execute the Agreement and comply with its terms by February 9, 2006, Ford will commence litigation against you in order to obtain injunctive relief, damages, and an award of attorney's fees and costs to remedy your infringement and dilution of Ford's trademarks." (Id. at 57 (emphasis omitted)).

### B. XOXIDE'S FEBRUARY 8, 2006 RESPONSE TO FORD'S LETTER

Counsel for Xoxide sent a timely response on February 8, 2006. In the letter, Xoxide denied "any liability" and addressed each of Ford's allegations in the pursuit of settlement. (Id., Ex. D [Xoxide's 2/8/06 Response] at 73). Xoxide rejected Ford's claim that the web address, business name, and vanity phone number infringed Ford's protected marks. (Id. at 73–75). Xoxide further maintained that the wheels at issue were "simply fair use," but *agreed to remove and destroy the "center caps that have an insignia which Ford regards as confusingly similar to the Cobra Logo."* (Id. at 75 (emphasis added)). Xoxide was apparently prepared to send the caps to Ford in accordance with the demands of Ford's January 26, 2006 cease and desist letter. (Id.).

### C. FORD'S MARCH 9, 2006 REPLY TO XOXIDE'S LETTER

Ford replied to Xoxide's February 8, 2006 letter on March 9, 2006, and devoted most of the correspondence to criticizing Xoxide's contentions and reasserting its trademark claims. (See generally id., Ex. C [Ford's 3/9/06 Reply] at 61–64). Ford

noted Xoxide's "agreement to cease and desist from the sale of center caps bearing counterfeits of Ford's trademarks," but reminded Xoxide that Ford sought full compliance with the terms of the Proposed Agreement. (*id.* at 54). Ford again invoked the prospect of litigation:

Ford's demands for the resolution of this matter are unchanged by your letter. Please advise your client that this letter constitutes Ford's final attempt at resolving this matter short of litigation. If your client intends to comply with Ford's requests, please ... return an executed copy of the settlement [by] the close of business on March 23, 2006. Otherwise, Ford will have no choice but to seek a judicial resolution of this matter.

(*Id.*).

### D. XOXIDE'S MARCH 23, 2006 SECOND RESPONSE

As before, Xoxide responded on March 23, 2006, before the expiration of Ford's deadline. The brief letter reaffirmed Xoxide's position with respect to liability, and also indicated that the letter was a "confidential settlement discussion and offer." (Hoffman Decl., Ex. B [3/23/06 Xoxide Letter to Ford] at 9). In addition, Xoxide notified Ford that the center caps were being sent and agreed to change the allegedly infringing vanity telephone number in another attempt to comply with the January 26, 2006 letter. (*Id.*). Finally, Xoxide requested "2 to 3 business days to complete [its] consideration and response re-

garding the domain name and business name." (*Id.*).

### E. XOXIDE FILED SUIT ON APRIL 3, 2006 IN THIS COURT

On April 3, 2006, Xoxide filed this suit in the Central District of California seeking a declaration that Xoxide's name, web address, telephone number, and center caps did not infringe Ford's trademark or constituted fair use. Xoxide failed to serve Ford with the Complaint until May 3, 2006. (Hoffman Decl. ¶ 2).

Four days *after* filing its Complaint with the Court, Xoxide completed its "consideration and response regarding the domain name and business name" and wrote to Ford explaining its conclusions. Xoxide again refuted Ford's claims of infringement and refused to cease usage of www.MustangTuning.com and the MustangTuning business name. (*Id.*, Ex. C [4/7/06 Xoxide Letter to Ford] at 10–11).

### F. FORD'S FINAL LETTER TO XOXIDE

On April 27, 2006, six days before receiving service of Xoxide's Complaint, Ford sent a final letter informing Xoxide of its intent to file suit on May 11, 2006. (Mot. to Dismiss, Ex. C [4/27/06 Ford Letter to Xoxide] at 68). On or about April 27, 2006, Jared Cherry, a paralegal in the offices of Ford's counsel, spoke with Xoxide's counsel regarding the prospects of settlement. (Cherry Decl. ¶¶ 1, 6).[2] Xoxide's counsel informed Cherry that "he did not believe that Ford would pursue this

---

2. Xoxide objects to Cherry's declaration on the grounds that statements in settlement discussions or offers to compromise are inadmissible. (Pl.'s Evidentiary Objections). The portion of the quoted evidentiary rule as cited by Xoxide, however, blatantly and conspicuously fails to explain that such evidence is only inadmissible when offered "to prove liability for or invalidity of the claim or its amount." Fed.R.Evid. 408. Where, as here, the evidence is offered to prove simply that negotiations were ongoing and initiated by Ford, the evidence is admissible. Indeed, any contrary holding would effectively preclude Ford's ability to prove that settlement discussions were ongoing and that Xoxide's suit was anticipatory and constituted improper forum shopping. Thus, the objection is OVERRULED.

matter through litigation, *but just in case Ford decided to do so, he had filed a declaratory judgment lawsuit against Ford in California as insurance* in case Ford decided to sue his client in Michigan," the "forum of [Ford's] choosing." (*Id.* at ¶ 6 (emphasis added)).

### G. FORD'S MAY 16, 2006 COMPLAINT FILED IN THE EASTERN DISTRICT OF MICHIGAN

Ford subsequently filed its "coercive suit" in the Eastern District of Michigan on May 16, 2006, alleging trademark infringement, cyberpiracy, false designation of origin, and trademark dilution. (*Id.* at 2, 7; Opp. at 3).

Ford now seeks to dismiss Xoxide's action in this Court, or to transfer it from this Court to the Eastern District of Michigan.

### III.

### DISCUSSION

### A. THE LEGAL STANDARD GOVERNING THE MOTION TO DISMISS

Under both California and federal law, the Court is vested with discretion in determining whether declaratory relief is necessary or proper given the particular circumstances presented to the Court. Cal.Code Civ. P. §§ 1060, 1061; *Cal. Ins. Guarantee Ass'n v.Super. Ct.*, 231 Cal. App.3d 1617, 1624, 283 Cal.Rptr. 104 (Ct. App.1991); *see also* 28 U.S.C. § 2201; *Huth v. Hartford Ins. Co.*, 298 F.3d 800, 802 (9th Cir.2002) ("The exercise of jurisdiction under the Federal Declaratory Judgment Act ... is committed to the sound discretion of the federal district courts.").

■ "The first to file rule is 'a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" *Inherent.com v. Martindale–Hubbell*, 420 F.Supp.2d 1093, 1097 (N.D.Cal.2006) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir.1982)). As Xoxide correctly points out, "the 'first to file' rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly." (Opp. at 6) (citing *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir.1979)); *see also Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir.1991).

■ That general rule, however, is not without exception. It is well-understood that "[c]ircumstances and modern judicial reality, however, may demand that we follow a different approach from time to time." *Church of Scientology*, 611 F.2d at 750; *see also* William W. Schwarzer, et al., *California Practice Guide; Federal Civil Procedure Before Trial* § 2:1329, 15 at 2E–63 (2005). That is, the Court may, in its discretion, rely on equitable grounds, such as "when the filing of the first suit evidences bad faith, *anticipatory suit, or forum shopping*," to determine whether to depart from the first to file rule. *Inherent.com.* 420 F.Supp.2d at 1097 (emphasis added); *see also Alltrade, Inc.*, 946 F.2d at 628 ("The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping.... [D]istrict court judges can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity.") (citations omitted).

■ Anticipatory suits are found when the "plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent," and are viewed with disfavor as examples of forum shopping and gamesmanship. *Guthy–Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179

F.R.D. 264, 271 (C.D.Cal.1998) (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D.Cal.1994)). "In addition, where . . . a declaratory judgment action has been triggered by a cease and desist letter" that both seeks settlement and notifies the party of the possibility of litigation upon collapse of negotiations, "equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first." *Z–Line Designs, Inc. v. Bell'O Int'l LLC,* 218 F.R.D. 663, 667 (N.D.Cal.2003).

When a district court identifies any of the circumstances above, it may, in its discretion, dismiss the first-filed action. *See id.*

**B.  XOXIDE'S DECLARATORY JUDGMENT SUIT IS ANTICIPATORY AND WARRANTS DISMISSAL**

█ The record outlined above, particularly the ongoing settlement discussions and dialogue between the parties, unambiguously establishes that the filing of Xoxide's Complaint in this Court was anticipatory and a method of forum shopping. Such conduct commands the application of the exception to the first to file rule.

Xoxide was warned from the outset that failure to "execute the Agreement and comply with its terms" by the specified deadlines would result in litigation. (Mot. to Dismiss, Ex. C [1/26/06 Ford Letter to Xoxide] at 57, 64, 68). Xoxide responded to Ford's letters on or before each deadline, and Ford delayed resort to judicial resolution during negotiations and what Xoxide's own letters called "settlement discussion." Ford's reasons for postponing litigation were bolstered by the fact that with each correspondence, Xoxide inched closer to acceding to Ford's requests. Indeed, in Xoxide's February 28, 2006 reply to Ford's January 26, 2006 cease and desist letter, Xoxide offered to destroy and send to Ford all "center caps that have an insignia which Ford® regards as confus-

ingly similar to the Cobra Logo®." (Mot. to Dismiss, Ex. D [Xoxide's 2/8/06 Response] at 75). Notwithstanding this discussion and the dialogue that continued— initiated by Ford's January 26, 2006 cease and desist letter—just days after requesting a time extension for "consideration and response regarding the domain name and business name," Xoxide filed suit in this Court as a form of "insurance." (Cherry Decl. ¶ 6).

Given the above record, the Court finds that Ford provided Xoxide with "specific, concrete indications that a suit by [Ford] was imminent." *Guthy–Renker Fitness, LLC,* 179 F.R.D. at 271. Xoxide cannot credibly argue otherwise.

Xoxide opposes the motion essentially by ignoring its thrust and focusing solely on the general first to file rule without regard to the arguments Ford has made in support of the exception. (*See generally* Opp.). Since the evidence supports the conclusion that the instant suit was simply a reaction to Ford's clear intent to file suit against Xoxide if negotiations broke down, the Court takes Xoxide's failure to meet the argument as a concession that it cannot do so.

Xoxide also fails to acknowledge that Ford is the registered holder of the trademarks at issue, (FAC ¶¶ 7, 10, 13, 15), and fails to mention the applicable case law that holds that "[w]here . . . the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed," even when filed later. *Tempco Elec. Heater Corp. v. Omega Eng'g,* 819 F.2d 746, 749 (7th Cir.1987); *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 185, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (noting that an alleged infringer cannot use the Declaratory Judgment Act to give it "a paramount right to choose the forum for trying out questions of infringement and validity."). Here, as

the owner of the marks, Ford attempted to minimize needless litigation and resolve the dispute amicably by negotiating a resolution outside of litigation. Xoxide responded by secretly filing a lawsuit in Los Angeles while giving the impression to Ford's representatives that it was making its best efforts to negotiate a settlement of the dispute. That undisclosed lawsuit remained unserved while Xoxide pretended to continue negotiation with Ford in a good faith effort to resolve the dispute short of litigation. When Ford was finally informed that Xoxide had filed suit, Xoxide's counsel David Hoffman indicated that the lawsuit was "insurance in case Ford decided to sue [Xoxide] in Michigan ... a forum of its choosing." (Cherry Decl. ¶ 6). While contesting the characterization of the conversation, Mr. Hoffman essentially admits the substance of the discussion, including the fact that settlement was still on the table and that Xoxide's filed action in this Court would serve to "keep our place as to filing dates and times" in the event that "discussions later broke down." (Hoffman Decl. ¶ 11). Under these circumstances, Xoxide's suit was anticipatory and an improper attempt at forum shopping; the Court will not give such a suit the deference ordinarily reserved for first-filed actions. *See Pacesetter Sys., Inc.,* 678 F.2d at 94, 97 (affirming district court's granting of the defendant's motion to dismiss "in deference to the court in which action was first filed").[3]

Given these circumstances, the Court concludes that "[t]o impose the 'first-to-file' doctrine in this instance ... would unreasonably penalize [Ford,] which attempted to resolve the dispute before filing suit." *Inherent.com,* 420 F.Supp.2d at 1100. Accordingly, dismissal of the instant action is appropriate. *See Z–Line Designs, Inc.,* 218 F.R.D. at 667.

## IV.

## CONCLUSION

For the foregoing reasons, Ford's motion to dismiss is **GRANTED.**

IT IS SO ORDERED.

---

[3]. Xoxide has argued that other potentially related cases may be pending in this Court and that dismissal should be denied on that ground. However, Xoxide has presented no authority to support this contention and the Court does not believe that such a fact should somehow alter the first-to-file analysis to which this Court adheres. The action should proceed as filed by Ford. However, while under these facts Ford should be afforded its choice of forum, considerations of related cases might affect discretionary motions to stay or transfer a related proceeding for fear of inconsistent judgments or to promote judicial efficiency. However, given that these arguments should be heard in the Eastern District of Michigan in the first instance, this Court need not address these issues herein.